Michael D. Braun (167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone:  (310) 836-6000
Fax:      (310) 836-60106
E-Mail: service@braunlawgroup.com

Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Tel:    (858) 242-5642
Fax:    (858) 430-3719
E-mail: rak@katriellaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| COLLEEN DAVISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KIA MOTORS AMERICA, INC.<br><br>Defendant. | CASE NO.  8:15-CV-00239-CJC-RNB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF COLLEEN DAVISON'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CLASS ALLEGATIONS IN FIRST AMENDED COMPLAINT**<br><br>Hearing Date: June 29, 2015<br>Time:            1:30 pm<br>Courtroom:    9B<br>Judge: Hon.    Cormac J. Carney |

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT……………………………..1

ARGUMENT……………………………………………………………………....3

I. THE FAC PROPERLY PLEADS ALL THE ELEMENTS OF THE CLRA…………..3

    A. The FAC Properly Alleges A Duty To Disclose That Kia Violated…..……….3

    B. The FAC Properly Pleads Reliance On Kia's Actionable Omission………..…..5

    C. The FAC Properly Pleads That The Defective Door Locks Pose A
       Safety Risk……………………………………………………………….…..11

    D. The FAC Adequately Alleges Kia's Knowledge Of The Defect…..…………17

II.    KIA'S SEPARATE ATTACK ON THE UCL CLAIM ALSO FAILS……..……18

III.   KIA'S ALTERNATIVE MOTION TO STRIKE THE CLASS ALLEGATIONS
    ALSO SHOULD BE DENIED…………………………………………..………20

    A. *Mazza* Does Not Preclude Pleading A Nationwide Class…………..……….21

    B. Owners Who Have Not Yet Experienced The Door Lock Defect May Still
       Be Part Of A Certifiable Class……………………………………...………24

CONCLUSION………………………………………………………………..25

1

1

# **TABLE OF AUTHORITIES**

2

**Cases:**

3

    *Asghari v. Volkswagen Grp. of America*,

4

42 F. Supp.3d 1306 (C.D. Cal. 2013)……………………………...……………11

5

    *Bruno v. Eckhart Corp.*,

6

280 F.R.D. 540 (C.D. Cal. 2012)………………………………….…………23

7

    *Chamberlan v. Ford Motor Co.*,

8

369 F. Supp.2d 1138 (N.D. Cal. 2005)……………………………………7, 8

9

    *Cholakyan v. Mercedes-Benz USA, LLC*,

10

796 F. Supp.2d 1220 (C.D. Cal. 2011)…………………………………..11

11

    *Consumer Advocates v. Echostar Satellite Corp.*,

12

113 Cal. App.4th 1351 (2003)………………………………………………..8

13

    *Corson v. Toyota Motor Sales, USA, Inc.*,

14

2013 WL 10068136 (C.D. Cal.  Jul. 18, 2013)………………………………2

15

    *Daugherty v. American Honda Motor Co.*,

16

144 Cal. App.4th 824 (2006)……………………………………………4

17

    *Doyle v. Chrysler Group LLC*,

18

2014 WL 3361770 (C.D. Cal. Jul. 3, 2014)…………………………………..10

19

    *Edwards v. Ford Motor Co.*,

20

2015 WL 847193 (9th. Cir. Feb. 27, 2015)…………………………………passim

21

    *Ehrlich v. BMW of North America, LLC*,

22

801 F. Supp.2d 908 (C.D. Cal. 2010)……………………………………..…4

23

    *Falk v. General Motors Corp.*,

24

496 F. Supp.2d 1088 (N.D. Cal. 2007)………………………………………6, 7

25

    *Herremans v. BMW of North America, LLC*,

26

2014 WL 5017843 (C.D. Cal. Oct. 3, 2014)………………………………8-9

27

28

Davison v. Kia Motors America, Inc.

No. 8:15-cv-00239-CJC-RNB
Pltf's Opp. to Dft's Mtn To Dismiss
Or Strike Class Allegations Of FAC

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
754 F. Supp.2d 1145 (C.D. Cal. 2010)………………….…………………………2, 11

*Keegan v. American Honda Motor Co., Inc.*,
838 F. Supp.2d 929, 944 (C.D. Cal. 2012)………………………………………11

*LiMandri v. Judkins*,
52 Cal. App.4th 326 (1997)…………………………………………………………..4

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
97 Cal. App.4th 1282 (2002)………………………………………………………2

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)………………………………………...…………passim

*Oestreicher v. Alienware Corp.*,
322 Fed. Appx., 489 (9th Cir. Apr. 2, 2009)…………………………….………4-5

*Wilson v. Hewlett–Packard Co.*,
668 F.3d 1136 (9th Cir. 2012)…………………………………………………..1

3

No. 8:15-cv-00239-CJC-RNB
Pltf's Opp. to Dft's Mtn To Dismiss
Or Strike Class Allegations Of FAC

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The question presented by Plaintiff Collen Davison's ("Plaintiff" or "Davison") First Amended Complaint ("FAC") and by Defendant Kia Motors America, Inc.'s ("Defendant" or Kia") motion to dismiss the FAC is whether vehicle owners who may become entrapped or locked within their vehicles due to an allegedly defective door lock mechanism that will not disarm, but whose defect was not disclosed by the manufacturer, have any recourse under California law.  Kia maintains that, even if such a defect and Kia's knowledge and non-disclosure of it are ultimately proven, the vehicle owner has no legal recourse so long as the defect did not manifest during the limited duration of Kia's express warranty.  California law holds otherwise.  For the reasons detailed below, Kia's motion to dismiss or strike the class allegations is without merit and should be denied.

While the terms of an express warranty *generally* govern the disclosure and repair obligations of a manufacturer, California law consistently has held that where a defect posing a safety risk is alleged, the manufacturer is subject to liability under, *inter alia*, the California Legal Remedies Act ("CLRA") for non-disclosure of the defect.  The Ninth Circuit confirmed as much merely three months ago in reversing a California federal district court's denial of class certification in another post-warranty automotive defect class action.  *See Edwards v. Ford Motor Co.*, 2015 WL 847193, at *2 (9th. Cir. Feb. 27, 2015) ("A manufacturer has a duty to disclose a known defect that poses an unreasonable safety hazard.") (citing *Wilson v. Hewlett–Packard Co.,* 668 F.3d 1136, 1141–43 (9th Cir.2012)).  Despite citing 70 cases in its opening brief, Kia neglected to mention or cite *Edwards* once, even though it is the latest Ninth Circuit decision involving a CLRA post-warranty automotive defect.

Equally misguided is Kia's argument that the FAC should be dismissed because Davison failed to plead the element of reliance with the requisite particularity.  *See* Kia's MTD at 6:1-8:7.  In an omission-based claim under the CLRA, California law is clear that such reliance is to be inferred of presumed where the omission is material.  *Edwards*,

2015 WL 847193, at*2 ("Because materiality is governed by an objective 'reasonable person' standard under California law, an inquiry that is the same for every class member, a finding that the defendant has failed to disclose information that would have been material to a reasonable person who purchased the defendant's product gives rise to a rebuttable inference of reliance as to the class.") (citing *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App.4th 1282, 1292-93 (2002)).  This Court has repeatedly held that, "[n]ondisclosures about safety considerations of consumer products are material." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab.  Litig.*, 754 F. Supp.2d 1145, 1173 (C.D. Cal. 2010) (quoted in *Corson v. Toyota Motor Sales, USA, Inc.*, 2013 WL 10068136, at *5 (C.D. Cal.  Jul. 18, 2013)).

 Kia also misses the mark when it argues that, in order to plead reliance in a CLRA omission-based case, a plaintiff must also allege which advertisements or disclosures she did see that make the non-disclosure false.  *See* Kia's MTD at 6:21-8:7.  This is incorrect. This Court has held (twice within the past year) that precisely because safety-related defects are material, reliance on their non-disclosure is rebuttably presumed. A plaintiff, therefore, need not allege the representations she read or heard in order to prove that she would have seen the disclosure of this material information had it been made by the defendant.  Instead, allegations of what disclosures or advertisements the plaintiff did see are required in a CLRA omissions case *only* when the plaintiff seeks to ascribe a duty to disclose on the manufacturer based on the manufacturer's "partial representations" that are alleged to be fraudulent or deceptive without the omitted disclosure.   That theory of liability, however, is not at issue here.

 Kia also is wrong in arguing that Davison is not entitled to any remedies under the UCL because she did not pay anything to Kia (thereby foreclosing any restitutionary remedy), and because she has already experienced the defect, thereby foreclosing with any injunctive relief.  *See* Kia's MTD, at 19:14-21:18.  Davison paid to purchase a Kia replacement door lock for her driver's door, and is entitled to seek restitution of the

2

money she paid for that part, regardless of whether she conveyed the money directly to Kia.  She has also claimed that, due to the non-disclosure of the defect, she paid more for her car than she would have had the defect been disclosed. *See* FAC, at ¶ 29.  Under the UCL, she is entitled to seek restitution for this overpayment.  Likewise, although her driver's door lock has been fixed (at Davison's expense), Davison's passenger door lock remains inoperative, and Kia refuses to replace it. *Id*. at ¶ 26.  Davison is, therefore, entitled to seek injunctive relief under the UCL to have Kia take action with respect to the ongoing defect plaguing Davison's passenger door lock.

Lastly, Kia's alternative motion to strike the class allegations of the FAC also fails. Kia argues that nationwide class allegations must be rejected in light of *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  But *Mazza*, which the Ninth Circuit made clear was limited to its own facts at the class certification stage, after class certification discovery had closed, and only after the defendant had proactively submitted evidence and argument as to why material differences in the various states' laws would preclude class treatment. *Id*. at 594.  Since then, California federal courts have rejected defendants' attempts to collapse *Mazza's* class certification holding into a motion to dismiss argument, and have denied requests to strike class allegations at the pleadings stage that are identical to the arguments now made by Kia. *See* section III *infra* (citing cases).  Kia's second argument, that the class may not include any owners whose vehicles have yet to manifest the door lock defect, is foreclosed by recent Ninth Circuit authority.

For all the foregoing reasons, as is more fully detailed below, Kia's motion to dismiss and/or strike the class allegations of the FAC should be denied.

## ARGUMENT

### I.   THE FAC PROPERLY PLEADS ALL THE ELEMENTS OF THE CLRA.

#### A. The FAC Properly Alleges A Duty To Disclose That Kia Violated.

Kia's motion stresses that it had no duty to disclose the defect plaguing its vehicles' door locks because it is not required to be a lifetime warrantor of its vehicles.

Davison v. Kia Motors America, Inc.

*See* Kia's MTD, at 15:26-16:6.  But this case is not about Kia's duty to *warrant*, but rather about its duty to *disclose*.  In the context of a defect that is known to the manufacturer at the time of sale and that poses a safety risk, California law squarely holds that the manufacturer may be subject to CLRA liability if it fails to disclose the defect. Thus, although the term of an express warranty will generally delimit the extent of a manufacturer's duty to repair defective items that fail during the course of the warranty, the CLRA superimposes an exception to this limitation where a safety-related defect was known to the manufacturer at the time of sale but not disclosed to the plaintiff.

To impose CLRA liability for a defendant's omission, a plaintiff must first plead facts sufficient to impose on the defendant a legal duty to disclose.  California appellate courts have set forth at least four different and independent bases under which a duty to disclose will arise:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*LiMandri v. Judkins*, 52 Cal. App.4th 326, 337 (1997).

Davison's FAC relies on the second articulated basis for a duty to disclose—Kia having exclusive knowledge of a material fact not known to her.   The California Court of Appeal has, in turn, held that such non-disclosure of material facts exists in the context of a defect manifesting after the expiration of a warranty where the defect relates to a safety risk.  *See Daugherty v. American Honda Motor Co.*, 144 Cal. App.4th 824, 836 (2006); *see also Ehrlich v. BMW of North America, LLC*, 801 F. Supp.2d 908, 918 (C.D. Cal. 2010) ("Consistent with *Falk* and *Daugherty,* the Court concludes that a safety-based exception exists that might create a duty to disclose a defect even after the period of an express warranty expires.").  Citing *Daugherty*, the Ninth Circuit has explained that under California law, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation *or* a safety issue." *Oestreicher*

4

*v. Alienware Corp.*, 322 Fed. Appx., 489, 493 (9th Cir. Apr. 2, 2009) (emphasis added).

Framed in this manner, Plaintiff's CLRA (and derivative UCL) claims are properly pled if she has properly alleged, as she has, that: (1) the door lock defect poses a safety risk; (2) the defect was known to Kia at the time of sale; but (3) Kia did not disclose the defect to Plaintiff.   Her FAC undoubtedly discloses all three of these elements. *See* FAC, at ¶¶ 1, 13, 21, 25, 31-35.   And, those allegations are not conclusory, but are supported with the requisite factual narrative that support the plausibility of Davison's claims.   We detail the sufficiency of Davison's "safety risk" and "knowledge" allegations separately at Sections I.C and I.D *infra*, but before doing so, we first address and debunk a related, but equally unsuccessful, argument that Kia resorts to in seeking dismissal of the FAC.  Specifically, Kia maintains that, notwithstanding any safety risk associated with the door lock defect, Davison cannot meet the requisite reliance element of her CLRA claim because she does not allege that she would have seen any disclosure and altered her behavior because she did not identify what disclosures or advertisements she did see. Kia is wrong.

**B. The FAC Properly Pleads Reliance On Kia's Actionable Omission.**

Davison's CLRA and UCL counts are omission-based claims.  She charges that Kia failed to disclose the door lock defect despite having a legal duty to do so. *See* FAC, at ¶¶ 31-35.   As the foregoing narrative showed, that duty is triggered by the safety risk posed by the door lock defect—a defect that impedes occupants from exiting their vehicles.  Undeterred, Kia argues that despite this pleading, Davison's FAC fails because she does not allege reliance on an actionable omission.  It faults Davison for not identifying which disclosures she did see and for not pleading that, had Kia disclosed the defect, she would have seen the disclosure and acted accordingly.  In Kia's words, "[h]er omission claim fails because she never alleges that she saw or relied on any statement that by Kia when she first purchased the car, foreclosing any claim that she would have seen or relied on the omitted information had it been disclosed." Kia's MTD, at 6:5-8.

This argument misses the mark and, as detailed below, has been expressly rejected by this Court repeatedly—at least twice within the past year alone.

Davison need not identify disclosures or advertisements she did see in order to assert her CLRA claim. In arguing otherwise, Kia erroneously conflates a CLRA claim that relies on a defendant's duty to disclose that is based on that defendant's partial representations (the fourth ground stated in *LiMandri*) with a CLRA claim that attributes the defendant's duty to disclose based on the altogether separate basis that the non-disclosure was a material fact (meaning, in the post-warranty context, a "safety issue"), in the defendant's exclusive knowledge. It is only under the former but not the latter prong, that the plaintiff must identify which representations of the defendant the plaintiff did see in order for a court and fact-finder to be able to assess whether those alleged representations really were only "partial representations" that were deceptive due to not also including the disclosure of the allegedly omitted facts.

When, as here, the plaintiff's omission-based CLRA claim is not premised on a "partial representation" theory in order to trigger the defendant's duty to disclose, then there is no need for the plaintiff to allege what representations the plaintiff did see about the product. A duty to disclose a safety risk known to the defendant but unknown to the plaintiff is imposed by *Daugherty* and *Oestreicher* without regard to whether the plaintiff saw any particular advertisements about the product.

That distinction was made clear in *Falk v. General Motors Corp.*, 496 F. Supp.2d 1088, 1095-96 (N.D. Cal. 2007). There, the plaintiff brought a class action on behalf of owners of GM vehicles, and alleged that speedometers in the class vehicles were defective. *Id*. at 1092. In its motion to dismiss, GM argued that the plaintiff failed to properly allege a relied upon omission because he had not identified actual representations that the defendant made and the plaintiff saw that rendered the omission deceptive. The district court agreed with the defendant that, in fact, the plaintiff failed to identify any representations that the defendant made that would support his claim of a

deceptive omission.  *Id*. at 1095. ("Such advice conveys no information about the GM trucks or speedometers; it therefore cannot be construed as a 'partial representation' of anything to do with the trucks.  Plaintiffs therefore fail to plead a duty to disclose under the fourth *Judkins* factor.").   Nevertheless, the district court held that, the plaintiff still stated an omission claim under the CLRA because he also had independently alleged that GM's duty to disclose the speedometer defect arose from the safety risk posed by this undisclosed defect.  *Id*. at 1096 ("plaintiffs' material allegations suffice to state a claim that GM had exclusive knowledge of the alleged defect in their speedometers.").   No identification of any particular representation was required (and none had been properly alleged) to uphold the CLRA omission-based claim under this independent safty-risk duty to disclose.

Similarly, in *Chamberlan v. Ford Motor Co.*, 369 F. Supp.2d 1138 (N.D. Cal. 2005), the Northern District of California expressly rejected the notion now pressed by Kia that, to succeed on an omissions-based CLRA automotive defect case, the plaintiff is required to show that the omitted information would have been seen or heard by him had it actually been disclosed by the defendant.  *Chamberlan* involved a class of Ford motor vehicle owners who complained of an undisclosed defect to the manifold of the class vehicles.  *Id*. at 1141.  In its summary judgment motion, Ford argued that there could be no reliance of an omission because the plaintiffs, who were not the original vehicle owners, could not establish that, even had the disclosures been made at the time of the vehicles' original sale, the plaintiffs would have heard the information from the original vehicle owners.  The district court rejected this argument (even at the summary judgment stage, where a plaintiff is required to produce actual evidence as opposed to resting on mere allegations), reasoning that, "Plaintiffs' inability to prove that the original owners of Ms. Chamberlan and Mr. Fok's cars would have passed along negative information about the manifolds goes to the weight of the evidence that the jury has to consider." *Id*. at 1146.

The underlying flaw in Kia's motion is that it erroneously proceeds from the flawed premise that, under the CLRA, every individual plaintiff or class member must show that the omitted information was or would have been material to her in causing that individual to act differently based on the omitted information. The law is precisely the opposite. In a CLRA omission claim, "[m]ateriality is judged by the effect on a 'reasonable consumer,' and this standard applies to CLRA claims. *Chamberlan*, 369 F. Supp.2d at 1145 (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App.4th 1351, 1360 (2003)). That objective standard for judging an omission under the CLRA was reaffirmed with full force by the Ninth Circuit just three months ago:

> *Because materiality is governed by an objective 'reasonable person' standard under California law, an inquiry that is the same for every class member, a finding that the defendant has failed to disclose information that would have been material to a reasonable person who purchased the defendant's product gives rise to a rebuttable inference of reliance as to the class.*

*Edwards*, 2015 WL 847193, at *2 (emphasis added).

That, under the CLRA, reliance of an omission properly alleged to be material may be rebuttably presumed without actual evidence of the plaintiff's own actions to establish her particular reliance shows why Kia's argument is misguided. If Plaintiff need not ultimately prove that she actually and subjectively relied on the omissions, it logically follows that she need not plead which representations she did see in order to establish that she would have seen and acted upon the omitted information had it been disclosed. This was precisely what this Court reasoned last year in another automotive defect case when it rejected the almost verbatim argument now levied by Kia:

> BMW nonetheless seeks to dismiss Herremans' claims because she fails to allege that she read, reviewed, or heard any statements concerning the class vehicles before purchasing a Mini–Cooper. Specifically, it contends she cannot claim reliance on an omission because she does not allege that she reviewed any advertisements or materials concerning Mini–Coopers prior to purchase. As support, BMW cites *Mirkin*, 5 Cal.4th 1082, for the proposition that Herremans

8

must allege that, had the omitted information been disclosed, she would have been aware of it and acted differently.

Herremans counters that she need not plead that she reviewed any materials about Mini–Coopers generally or the water pump specifically. She cites *Doyle v. Chrysler Grp., LLC,* SACV 13–00620 JVS, 2014 WL 3361770, at *5-*6 (C.D. Cal. Jul. 3, 2014). In *Doyle,* Judge James V. Selna rejected Chrysler's argument on summary judgment that the plaintiff had not raised triable issues of fact as to whether he would have acted differently had the information not disclosed been communicated. The court agrees with Judge Selna's observation that precisely because reliance is presumed where an omission is material, such a showing is not required unless the defendant rebuts the presumption. *See id.,* at *6. BMW, of course, cannot do so in the context of a motion to dismiss. It asserts, however, that to plead plausible claims, Herremans must 'allege exposure to at least some pre-purchase marketing or other materials.' ***The court does not agree. As in* Doyle, *Herremans alleges a 'wholesale nondisclosure' of a material defect. Absent a showing by BMW that were was a document or communication that Herremans should have reviewed before purchase that contained information about the water pump, the court cannot find her claim implausible. BMW may be able to make such a showing at some future point in the litigation and rebut the presumption of actual reliance. Herremans, however, is not required to anticipate such proof and disprove what essentially amounts to a defense in her complaint.***

*Herremans v. BMW of North America, LLC*, 2014 WL 5017843, at *18 - *19 (C.D. Cal. Oct. 3, 2014) (emphasis added).

*Herremans* holding is hardly anomalous. It coincides with this Court's prior holding announced earlier last year in *Doyle*. In *Doyle*, Judge Selna similarly rejected the same argument now raised by Kia:

Similarly, Chrysler's argument that Doyle failed to read any materials about the regulators does not negate reliance. A plaintiff is not required to demonstrate he reviewed all such materials. The cases Chrysler cites to suggest such a duty either involve terms and conditions provided to a consumer in conjunction with subscription or major purchases where it would be reasonable to expect consumers to

9

have reviewed brochures, websites, or promotional materials. Chrysler does not point to any particular document governing the replacement regulators which it provided to Doyle that Doyle is supposed to have read or provide any rationale why a car part would be the sort of purchase where consumers would reasonably be expected to review materials. Chrysler merely argues that Doyle failed to do research or investigate the regulators on his own. This is insufficient under the law to negate reliance.

At the hearing, Chrysler argued that the Court's analysis of reliance is incorrect under *Mirkin v. Wasserman*. Chrysler cites *Mirkin* for the proposition that plaintiffs must prove they would have been aware of a disclosure had one been made. However, *Mirkin* does not extend as far as Chrysler suggests and does not negate reliance in this case. The California Supreme Court in *Mirkin* noted that reliance requires proving that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.' *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093 (1993). *Mirkin,* a deceit action relating to misrepresentations made in prospectuses and filings that allegedly caused the company's stock price to drop, declined to apply the fraud-on-the-market theory applicable to fraud actions under federal securities laws to common law deceit actions in California. Instead, *Mirkin* found that plaintiffs asserting deceit claims must plead and prove actual reliance.

**Chrysler's reliance on Mirkin does not negate reliance here.[1] First, Chrysler does not demonstrate why Mirkin is applicable here, where reliance is presumed under the CLRA and UCL if the omitted information is material.**

*Doyle v. Chrysler Group LLC*, 2014 WL 3361770, at *5 - *6 (C.D. Cal. Jul. 3, 2014) (internal citations omitted, emphasis added).

As this Court's decisions in at least *Doyle* and *Herremans* make clear (and as reaffirmed by the Ninth Circuit just three months ago in *Edwards*), under the CLRA,

---

[1] *Mirkin* is the precise case on which Kia premises its argument that "Plaintiff is required to identify statements or representations she actually saw and relied on because she must 'prove that, had the omitted information been disclosed, [she] would have been aware of it and behaved differently.'" Kia's MTD, at 6:16-20 (quoting *Mirkin*, 5 Cal. 4th at 1093)). For the reasons detailed by this Court in *Doyle*, *Mirkin*, which was not a CLRA but a common law deceit action, is inapplicable and distinguishable from a CLRA action where, as a matter of law, an omission that is material carries a presumption of reliance.

material omissions carry a rebuttable presumption of reliance.  Further, this Court has consistently held that omissions of a defect posing a safety risk are, by their very nature, material, such that they carry a presumption of reliance.  *See Doyle*, 2014 WL 3361770, at \*5 ("As the Court discusses in the next section, the alleged omission is material because it relates to a safety concern, so reliance is presumed."); *Asghari v. Volkswagen Grp. of America*, 42 F. Supp.3d 1306, 1330-31 (C.D. Cal. 2013) ("Because plaintiffs have adequately alleged a safety defect, they have sufficiently pled a material breach of the duty to disclose for purposes of the UCL and CLRA**.**"); *Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp.2d 929, 944 (C.D. Cal. 2012) ("Because plaintiffs have adequately alleged a safety defect, they have sufficiently pled a material failure to disclose for purposes of the CLRA and UCL"); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp.2d 1220, 1238 (C.D. Cal. 2011) ("Because Cholakyan has adequately alleged a safety defect, he has sufficiently pled a material failure to disclose for purposes of the UCL and CLRA."); *In re Toyota Motor Corp. Unintended Acceleration*, 754 F. Supp.2d at 1173 ("Nondisclosures about safety considerations of consumer products are material.").  In light of this Court's line of authority equating non-disclosure of a defect implicating a safety risk with a material omission under the CLRA and UCL, the pertinent question is whether Davison properly pled that the door lock defect poses a safety risk within the meaning of the CLRA and UCL.  She did.

## C. The FAC Properly Pleads That The Defective Door Locks Pose A Safety Risk.

The defect at issue pled by Davison is that the door locks in Kia Optimas have a defective latch and lock mechanism that fails and causes the doors to be unable to be unlocked when the passengers are in the vehicle. *See* FAC, at ¶ 1.  Objectively, there can be no serious dispute that, if proven, such a defect that impairs occupants ability to exit the vehicle poses real safety concerns and risks.  Certainly, it is a sufficient pleading from which a rational fact-finder could conclude that the defect poses real concerns.  In

*Grodzitsky v. American Honda Motor Co.*, 2013 WL 2631326 (C.D. Cal. Jun. 12, 2013), this Court found that, even an allegedly defective window mechanism that is "susceptible to frequent mechanical failure rendering the Class Vehicle's side windows inoperable and often irretrievably stuck," (*id*. at *1), states a safety risk defect within the meaning of the CLRA and the *Daugherty* duty to disclose. *See id.*, at *5 ("Moreover, Plaintiffs have alleged the existence of an unreasonable safety defect.").

If the defective window mechanisms pose safety-related risks, it follows that a defective door lock mechanism that renders the door—the primary and only intended means of egress from the vehicle—similarly inoperative, likewise states a safety risk. Remarkably, without denying the defect or its existence, Kia maintains that a door that will not unlock poses, "at most an inconvenience rather than a real safety risk." Kia's MTD, at 15:2-3. Thus, to the vehicle owner who at the time of an accident must exit the vehicle quickly, Kia condescendingly retorts that there is no reason to worry because she should just seek an alternate exit by climbing out her window, or climbing to the back seat to exit from the rear doors. *Id*. at 15:5-10. This truly is a remarkable assertion from a car manufacturer.

Setting aside the sheer incredulity of advising a vehicle owner involved in an accident that she is not to be concerned about defective door locks in her car that may prevent her from opening her car door to exit the car, the remedies posited by Kia assume that such alternatives will even be available. But, as the FAC detailed, many consumers (including Davison) experienced the defective door locks plaguing more than one door at the same time, such that they were not able to exit the car from either door. *See* FAC, at ¶¶ 16, 21. And, of course, during an accident, it is foreseeable that an occupant may suffer broken bones or other injuries that would prevent her from climbing out a window or over front seats to attempt exit through a rear door (which may or may not be plagued by the same defect). And what about the elderly, infirm, and minor children or babies? For them crawling out a window or scaling the front row of seats to seek egress from the

rear windows or doors may be more than merely an "inconvenience."

Astonishingly, in arguments that could only be conceived of by lawyers but that are devoid of any real world sense of actual consequences, Kia derides as "speculative" the safety risk posed by the Kia Optima doors that will not unlock by arguing that:

> The supposed safety risk here depends entirely on an intervening external circumstance—in Plaintiff's words, 'an accident or other event, that requires a quick exit from the motor vehicle.' In other words, it is not the door lock that is threatening the occupant's safety, it is the intervening accident or 'other event.'

Kia's MTD, at 12:9-13.

This is nonsense.  Under Kia's tortured logic, even a defective seatbelt that fails engage or release in the event of a crash would not pose a safety risk because, under Kia's logic, the defect would not come into play until and unless an accident (i.e., the "intervening event") occurred, and then it would be the accident and not the failing seatbelt that posed the safety hazard.  But, of course, that is patently untrue.  An accident that would pose no hazard to an occupant that could alight from the car would very well pose a safety risk to an occupant that may not be able to readily exit the vehicle at the accident scene because her door will not unlock.

Nor is it true that the defective door lock would only pose a safety risk if the occupant were involved in an accident.  Being unable to exit out one's locked car door(s) poses a safety hazard to drivers, children, and other occupants even in the absence of a collision, as has been attested to by numerous NHTSA complaints reprinted in the FAC. But, even assuming *arguendo* that the occurrence of an accident were a necessary predicate to finding that the defect posed a safety concern, that would be wholly irrelevant.  That accidents involving motor vehicles occur and may occur is hardly speculative; regrettably, it is patently foreseeable.  Recognizing that axiomatic truth, this and other courts have found automotive defects to pose a safety risk within the meaning of the CLRA even when (or, precisely because) the safety risk would come into play at

13

1  the time of an accident.  Thus, in *Ehrlich*, this Court found that an allegation that the

2  windshields of Mini Cooper automobiles were susceptible to cracking stated a safety

3  concern within the CLRA duty to disclose because it was alleged that "if a MINI with a

4  cracked windshield is in a roll-over accident, the windshield can become dislodged,

5  compromising roof-crush resistance and causing serious head and neck injuries." *Ehrlich*,

6  801 F. Supp.2d at 918.  This Court ***rejected*** BMW's argument (the same argument made

7  by Kia here), that "injuries would not occur unless an owner makes a conscious decision

8  to drive a MINI with a cracked windshield and then gets into a rollover accident." *Id*.

9       Similarly, in *Marsikian v. Mercedes-Benz USA, LLC*, 2009 WL 8379784, at *1

10  (C.D. Cal. May 4, 2009), the CLRA claim was premised on the allegation that a valve in

11  the vehicle's AIS climate control system was "susceptible to clogging, which then causes

12  the AIS to fill with water when it is raining or when the vehicle is washed." The safety

13  risk allegation was that the "defectively designed AIS is a safety hazard because the

14  flooding of the AIS with water while the vehicle is in operation may cause catastrophic

15  engine and electrical system failure, which in turn may cause traffic accidents." *Id*.

16  Mercedes argued, as Kia does here, that "the fact that exposure to certain environmental

17  conditions could in some cases lead to clogging of the reed valve and water damage is not

18  material. Defendant dismisses as purely speculative Plaintiff's allegations that the

19  clogging of the reed valve is a safety hazard and that this fact would have affected a

20  reasonable consumer's decision to buy the car." *Id*. at *6.  Like Kia's argument here,

21  Mercedes' safety argument in *Marsikian* stressed that it depended on the occurrence of an

22  external event; namely, a heavy downpour or car wash during the operation of the vehicle

23  at the time of the valve's failure, and even then, any safety consequence would require

24  any water infiltration to be in sufficient quantity and at a precise location within the car

25  so as to actually damage the electrical components in a manner that disabled the car.

26  This Court, however, rejected that argument as a basis to dismiss the pleading:

27       Such   contentions   are   better   raised   on   summary   judgment.   Plaintiffs'

28                                      14

Davison v. Kia Motors America, Inc.

allegations, which must be construed favorably to them, satisfy the applicable pleading standards.  Although the safety implications of a flooded climate control system are not as obvious to a lay person as the danger posed by a defective speedometer, it is not implausible that the flooding would cause 'catastrophic engine and electrical system failure' while the car is on the road.  Given the plausible prospect of a safety problem, as well as the monetary cost and inconvenience of water damage in the car, Plaintiffs' allegations that the omitted information would have affected a reasonable consumer's willingness to buy the car at the prices offered are also plausible and plainly sufficient.

*Id.* (citing *Bell Atlantic v. Twombley*, 550 U.S. 544 (2007)).

So too, in *Keegan*, the CLRA safety risk allegation was that "as a result of the rear suspension defect, the class vehicles' tires would suffer premature wear." *Keegan*, 838. F. Supp.2d at 939. Specifically, the plaintiffs alleged that, this "defect allegedly causes uneven tread wear on the tires, which can result in 'catastrophic' tire failure because one side of the tire receives more pressure than the other." *Id*. at 934.  The Court **rejected** Honda's argument that there was no actionable safety risk pled because, like Kia here, the defendants "assert that the allegedly premature tread wear was 'open and obvious' to plaintiffs, and should have led them to replace their tires immediately, rather than assuming the risk of continuing to drive on worn tires. Defendants assert that because any safety issues could have occurred 'only in the absence of reasonable diligence by vehicle owners,' plaintiffs' CLRA claims fail." *Id*. at 942 *compare with* Kia's MTD at 13:11-13 ("because the alleged defect here is progressive and gradual, rather than sudden or catastrophic, the driver has notice of the issue before any true safety issue arises.").

Kia erroneously relies on *Smith v. Ford Motor Co.*, 462 Fed. Appx. 660 (9th Cir. Dec. 29, 2011) to argue that no safety defect is alleged here. *See* Kia's MTD at 11:18-23; 12:7-20 (discussing and relying at length on *Smith*).  But *Smith* is readily inapplicable and immediately distinguishable.  For starters, *Smith* was decided on summary judgment based on actual evidence presented after discovery, not on the mere pleadings.  *See Smith*, 462 Fed. Appx. at 662.   This Court has relied on that procedural difference alone

as a sufficient basis to reject a defendant's reliance on *Smith* at the pleadings stage.  *See Decker v. Mazda Motor of America, Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011) ("Unlike this Court, *Smith* was deciding a summary judgment motion and based its conclusion on the "respective evidentiary showings."  At the motion to dismiss stage, Plaintiff's safety risk allegations just need to be plausible to survive, which they are.  Specifically, it is plausible that a misapplication of the clutch while driving could lead to a 'Clutch No Start' issue while on a busy and dangerous roadway.") (citing *Ashcroft v. Iqbal*, 129 C. Ct. 1937, 1949 (2009)).

In any event, *Smith* has no bearing on the factual allegations made here.  Instead, *Smith's* allegations of a safety risk centered not on the operation of the car, but rather that the car's ignition lock defect meant that a car could never be started in the first place (or possibly shut off), such that the driver could end up stranded. *Smith*, 462 Fed. Appx. at 663.  It was in that context that the Ninth Circuit affirmed the summary judgment grant, by holding that merely being unable to operate the car in the first place, does not pose a safety risk (to hold otherwise would be akin to stating that not having a car to operate in the first place amounts to a safety hazard, which plainly is not the case).  That decision has no application to this case, which does not claim an inability to start the car as the safety hazard.

The other case relied upon by Kia, *Eisen v. Porsche Cars North Am.*, 2012 WL 841019 (C.D. Cal. Feb.22, 2012) (cited in Kia's MTD at 11:23-28) is to the same effect.  There, as in *Smith*, the district court held unremarkably that where the alleged risk is merely being left stranded on the road due to the alleged defect, that does not pose an actionable safety hazard.  *Id*. at *5 (rejecting safety risk allegation because "[t]he only safety concern alleged in the complaint is that the defect causes vehicles to get 'stuck on the road.'").  Whatever the import of that allegation, it is not the factual predicate of Davison's FAC.

Because the FAC sufficiently pleads a defect that raises a reasonable safety risk, its

16

1   non-disclosure carries a presumption of reliance under the CLRA and UCL.

2   **D. The FAC Adequately Alleges Kia's Knowledge Of The Defect.**

3   Kia also seeks dismissal of the FAC arguing that "[n]othing in the Complaint

4   shows Kia knew of the defect at the time of sale." Kia's MTD, at 8:8-9. This is plainly

5   inaccurate. Aside from pasting actual consumer complaints about the issue that were sent

6   to NHTSA and to Kia's dealers *before* Davison purchased her 2003 Kia Optima (*see*

7   FAC, at ¶¶ 8, 9), the FAC also alleges that NHTSA investigated these very complaints of

8   defective door locks plaguing the Kia Optima as early as the 2001 model year (i.e., two

9   years before Davison's vehicle was purchased). *See* FAC, at ¶ 38. Kia provided

10  documentation and a response to NHTSA. NHTSA's Engineering Analysis Closing

11  Report, of whose existence and contents the Court may take judicial notice, establish that

12  Kia was receiving widespread complaints about this very issue well before Davison

13  purchased her 2003 Kia Optima. *See* Ex. 1 to Pltf's Request For Judicial Notice (filed

14  herewith), at p. 14. Thus, for example, at page 14 of NHTSA's Report, the Agency

15  supplies a chart entitled, "Kia Optima Door Lock Complaints/Reports By Date." *Id*. The

16  chart tracks the number of door lock complaints that Kia received each month and year in

17  which the complaints were made to Kia. *Id*. It shows that such complaints began in the

18  first quarter of 2001. By the second quarter of 2002, Kia had received 23 such

19  complaints for that quarter alone, and in the third quarter of 2002 nearly double as many

20  complaints (44) were received in that quarter alone; yet another 26 such complaints of

21  non-opening door locks were received by Kia in the fourth quarter of 2002 alone. *Id*. In

22  2003 (the year in which Davison purchased her car), NHTSA received 151 additional

23  complaints of door locks that would not unlock, with 75 of those additional complaints

24  coming in during the third quarter of 2003 alone.

25  But those reports of mere complaints, significant as they are, pale in comparison to

26  the number of warranty claims that Kia received about the defective door locks. *See id*.,

27  at p. 15 (Table). A separate NHTSA Table based on Kia's own reported data shows that

28

17

as early as late 2000, Kia received warranty claims of defective door locks for the 2001 Kia Optima. ***By 2001, Kia had received 448 such warranty claims*** for that car (comprised of: 50 warranty claims in the first quarter of 2001; 73 in the second quarter; 138 warranty claims in the third quarter; and, 197 warranty claims in the fourth quarter of 2001). The number of warranty claims kept increasing apace. ***In 2002 alone, Kia received over 2,700 warranty claims for defective door locks in the 2001Kia Optima***. *Id*. (showing the following for warranty claims by quarter in 2002: 217 in the first quarter of 2002; 483 in the second quarter of 2002;1200 warranty claims in the third quarter of 2002; and, 809 warranty claims in the fourth quarter of 2002). ***During the 2003 calendar year, the warranty claims about defective door locks increased even further to a total of 3,375 such warranty claims made in 2003 alone***. As NHTSA pointed out, "the subject door lock system ***had a record of very high failure/warranty rates extending back to calendar year 2002***." *Id*. at p. 16 (emphasis added).

In the face of this damning evidence, which Kia itself supplied to NHTSA, how could Kia and its counsel argue in good faith before this Court that there is no evidence that Kia had any knowledge of the alleged defect prior to Davison's purchase of her car ? They cannot. Nor can Kia seek to rely on the fact that NHTSA closed its investigation without ordering a recall. As NHTSA's own report cautioned, "[t]he closing of this investigation does not constitute a finding by NHTSA that a safety-related defect does not exist." *Id*. at 16.

There is sufficiently pled or judicially noticeable facts from which a fact-finder could plausibly conclude that Kia possessed the requisite knowledge of the door lock defect at the time of sale of Davison's car.

## II.   <u>KIA'S SEPARATE ATTACK ON THE UCL CLAIM ALSO FAILS.</u>

Davison, whose driver's door lock failed, paid to have that door lock replaced with a new part. *See* FAC, at ¶¶ 26, 60 . Despite this, Kia claims that Davison is not entitled to any restitution under the UCL because she did not allege that she paid the money for

this replacement part "*to Kia* for any repairs or replacement parts." Kia's MTD, at 20:8 (emphasis added).  This argument is unavailing.  This Court has held that restitution under the UCL does not require showing that the plaintiff paid the money directly to the defendant; restitution may be had even where the money was paid to a third-party who, in turn, dealt with the defendant.  *See Annunziato v. eMachines, Inc.*, 2005 WL 5955673, at *2 (C.D. Cal.  Nov. 7, 2005).  Here, an alleged defect of Kia's own making caused Plaintiff to have to pay for a replacement Kia part that failed.  Quite obviously then, Kia realized some benefit from Davison's payment of money to purchase a new Kia door lock part to replace the one that allegedly failed as a result of Kia's business practice.  That is all that is required to state a plea for restitution under the UCL.

Kia's attack on Davison's UCL claim for restitution also fails for the independent reason that the economic injury that suffices to confer standing under the UCL is the diminished value of the vehicle resulting from a defect that affects every member of the class. The fact that some members, such as plaintiff, chose to fix their defective door locks does not alter the existence of economic injury resulting from the defect.  Where, as here, a plaintiff contends that as a result of the defendant's unlawful or unfair business practices under the UCL, she paid more for the vehicle than she otherwise would have paid, she adequately asserts an injury-in-fact under the UCL that gives rise to its restitution remedy.  *See* FAC, at ¶ 29 ("Had Plaintiff and other Class members known about the Door Lock Defect at the time of purchase, they would not have bought the Class Vehicles, *or would have paid substantially less for them.*"); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (holding with respect to UCL claim that,"[t]o the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'"); *Clayworth v. Pfizer, Inc.,* 49 Cal. 4th 758, 788 (2010) ("Pharmacies paid more than they otherwise would have because of a price-fixing conspiracy in violation of state law. The voters' intent that under Proposition 64 [UCL]suits be limited to those who suffer injury

in fact is satisfied here.").

Kia also claims that Davison lacks standing to seek injunctive relief under the UCL because "she is already aware of the supposed defect and cannot be further deceived." Kia's MTD, at 20:25-26.  But, Kia selectively ignores the FAC's allegation that, while Davison has paid to have the defective door lock on her *driver's* door fixed, "[t]he lock on the *passenger* side door, however, remains inoperable presenting the same safety issues described above."  FAC, at ¶ 26.  Kia continues to deny any responsibility to replace or repair the passenger door lock, standing on the notion that the terms of its since-expired express warranty shield Kia from any further repair obligation.  Davison, therefore, is entitled to have this Court declare that Kia is not so immunized, as well as being entitled to an injunction directing Kia to replace the defective door lock still present in Davison's car.

Because Davison has standing to seek both restitution, declaratory, and injunctive relief, Kia's separate attack on Count II of the FAC also fails.

### III.    KIA'S ALTERNATIVE MOTION TO STRIKE THE CLASS ALLEGATIONS ALSO SHOULD BE DENIED.

In its alternative plea for relief, Kia seeks to strike Plaintiff's class allegations claiming that (1) a proposed class cannot include members who have not experienced the door lock defect and (2) that under *Mazza*, a nationwide class is not certifiable as a matter of law. *See* Kia's MTD, at 21:19-24:12.  Although Kia fashions this as a motion "to strike," it fails to so much as mention Federal Rule of Civil Procedure 12(f), the Federal Rule that governs motions to strike.  Rule 12(f) is extremely limited in scope and provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Allegations seeking to certify an action as a class action or defining the particular class to be certified do not amount to such "redundant, immaterial, impertinent, or scandalous matter" so as to come within the limited sweep of Rule 12(f). *Tasion Communications.,*

20

*Inc. v. Ubiquiti Networks*, 2014 U.S. Dist. LEXIS 35455, *9 (N.D. Cal. 2014).

Like Kia, the *Tasion* defendants peppered their brief with citations to certain cases that held that "in rare circumstances, class allegations may be struck where 'the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.'" *Id*. (citing *Sanders v. Apple Inc.*, 672 F. Supp.2d 978, 990 (N.D. Cal. 2009). Ultimately, the *Tasion* court found that defendants' reliance on this line of authority—which, in any event, expressed a narrow exception to the general rule—was misplaced in light of subsequent Ninth Circuit authority:

> "[T]he Court finds that the viability of this case law is questionable in light of the Ninth Circuit's decision in *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970 (9th Cir. 2010). In that case, the defendant brought a motion to strike under Rule 12(f) arguing that 'Whittlestone's claim for lost profits and consequential damages should be stricken from the complaint, because such damages are precluded as a matter of law.' *Id.* at 974. The Ninth Circuit reversed the district court's grant of the motion to strike. The Court noted under the plain text of the rule, a motion to strike may only be granted where the allegations in question are "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Id.* at 973–74. Significantly, the Court found that the defendant's argument—that the substantive law barred the damages—***did not fit into any of these categories.***

*Id*. (emphasis added).

The *Tasion* court found that in light of *Whittlestone*, striking class allegations was a procedurally improper remedy to be sought under a Rule 12(f) motion to strike. *Id*. *Tasion's* logic, interpreting Ninth Circuit law, leads to the conclusion that a "motion to strike" cannot be used to merely excise or narrow class allegations that are pled in a complaint.  The proper vehicle to defeat class certification allegations is an opposition to a motion to class certification.  In any event, even if such a remedy were procedurally available, it still would not be in order here because the bases that Kia relies upon to seek the extraordinary remedy of striking class allegations are unavailing.

### A. *Mazza* Does Not Preclude Pleading A Nationwide Class.

Kia contends that under *Mazza,* non-California residents can't avail themselves of

California's consumer protection laws.  *See* Kia's MTD, at 22:23-24.  Kia "conflate[s] two issues: the extraterritorial application of California consumer protection laws (or the ability of a nonresident plaintiff to assert a claim under California law), and choice-of-law analysis." *Forcellati v. Hyland's, Inc.,* 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012). "Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Opperman v. Path, Inc*., 2014 U.S. Dist. LEXIS 67225, *36-37 (N.D. Cal. May 14, 2014) (quoting *Mazza*, 666 F.3d at 589).  Even *Mazza* found that "California ha[d] a constitutionally sufficient aggregation of contacts to the claims of each putative class member . . . because Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members [were] located in California." *Mazza*, 666 F.3d at 589.

Contrary to Kia's assertion, this Court has actually explained that "*Mazza **did not** . . .* create a 'general rule that 'where an out-of-state plaintiff claims to have been deceived or harmed as a result of misrepresentations or omissions received outside of California, that plaintiff's consumer protection claims must be brought under that plaintiff's own state laws.'" *Asghari*, 42 F. Supp. 3d at1316 (*quoting Forcellati*, 876 F. Supp. 2d at 1161).   Unlike the defendant in *Mazza* (which actually presented the issue as part of class certification briefing), Kia does not present *any* argument that other states' consumer protection laws are materially different than California's so as to preclude nationwide class treatment to the facts of this case.  Recognizing that *Mazza* was decided after full class certification briefing and was specifically limited to "the facts and circumstances of th[at] case," the court in *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) explained why striking class allegations at the pleadings stage before any fact-specific choice of law analysis was proffered by a defendant or undertaken by the Court was improper:

> [Th]e Court finds that striking the nationwide class allegations at this stage of this case would be premature. The Ninth Circuit's opinion in

> *Mazza*—which was decided at the class certification stage and not on a motion to dismiss—depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws applied to the facts of the plaintiffs' claims. *See id.* at 589-94. By contrast, there has been no choice-of-law analysis in this case: Defendant—who bears the burden of demonstrating "that foreign law, rather than California law, should apply to class claims" in a California choice-of-law analysis, *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)—provides no support for its position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to Werdebaugh's class claims. Absent the sort of detailed choice-of-law analysis that guided the Ninth Circuit in *Mazza*, the Court declines to evaluate how California's choice-of-law rules affect Werdebaugh's class claims at this time. Accordingly, the Court DENIES Defendant's Motion to Strike Werdebaugh's nationwide class claims

*Id.*, at *55-56; s*ee also, Clancy v. The Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *In re Clorox Consumer Litig*., 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Significantly, *Mazza* was decided on a motion for class certification, not a motion to strike. At [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate.").

Underscoring the impropriety of foreclosing a nationwide class under *Mazza* (let alone doing so at merely the pleading stage) is this Court's decision in *Bruno v. Eckhart Corp*., 280 F.R.D. 540 (C.D. Cal. 2012).  There, Judge Carter denied a motion to reconsider certification of a nationwide class, finding that *Mazza* did not change the law in California, and recognized that once Plaintiffs show California has sufficient interest, it is defendant's burden to prove other state laws are in conflict. *Id.* at 547 ("District courts routinely apply the California consumer protection laws at issue in *Mazza* and in the present case—California Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL)—to nationwide classes.").

Davison v. Kia Motors America, Inc.

### B. Owners Who Have Not Yet Experienced The Door Lock Defect May Still Be Part Of A Certifiable Class.

Kia next claims that the class may not include owners whose cars have yet to manifest the door lock defect. *See* Kia's MTD, at 21:24-22:15.   This argument is contrary to Ninth Circuit law. *See Wolin v. Jaguar Land Rover N.A.*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("we have held that proof of the manifestation of a defect is not a prerequisite to class certification"); *Edwards*, 2015 WL 847193, at *2 ("In order to satisfy the predominance requirement, the plaintiff need not prove the existence of the defect."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010) ("The Court agrees with Plaintiffs that experiencing an SUA defect is not required for standing.");[2] see also In re CRT Antitrust Litig., 2013 WL 5391159, at *5 (N.D. Cal. Sept. 19, 2013) ("Defendants' argument on this point is essentially that the [plaintiffs] must be able to prove at the class certification stage that every single (or basically every single) class member was injured by Defendants' conduct. *This contention is wrong*.") (emphasis added).

Moreover, the FAC also claims injury for the diminished value of vehicles that are equipped with these now known defective locks (whether or not the defect actually manifested).  *See* FAC, at ¶ 29 (this allegation was incorporated by reference into Davison's UCL claim, *see* FAC, at ¶ 54).  That is, because the vehicles were equipped with door locks that are now known to be inordinately susceptible to fail and prevent the door from unlocking, the car is worth less than what was paid for it regardless of whether the door lock has already failed.   Kia ignores this allegation, but its inclusion in the FAC defeats Kia's self-serving assertion that owners whose vehicles have yet to experience the defect necessarily suffered no injury.

---

[2] Kia's reliance on *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, (1995) is misplaced, as its holding has been overruled. *See Conley v. Pacific Gas and Elec. Co.*, 131 Cal. App. 4th 260, 268, 31 Cal. Rptr. 3d 719 (2005) ("We agree that the holding in *American Suzuki* on which the trial court relied has been placed in serious question, if not overruled."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F. Supp. 2d 1145, 1186, (C.D. Cal. 2010)(finding *American Suzuki* "of little persuasive value.").

24

1   Because striking class allegations at the pleading stage is not a procedurally

2   available remedy under Rule 12(f) governing motions to strike and because, in any event,

3   the bases for Kia's motion to strike are unavailing, Kia's alternative motion to strike the

4   class allegations of the FAC should also be denied.

5                          <u>**CONCLUSION**</u>

6        For all the foregoing reasons, Kia's motion to dismiss or strike should be DENIED.

7   In the event, the Court is inclined to grant any part of Kia's motion, Davison respectfully

8   requests leave to amend to remedy any pleading defects identified in the Court's order.

9

10  Dated: June 1, 2015                    Respectfully Submitted,

11                                         /s/ Michael D. Braun

12                                         _____
                                           Michael D. Braun
                                           **BRAUN LAW GROUP, P.C.**
13                                         10680 W. Pico Blvd., Suite 280
                                           Los Angeles, CA 90064
14                                         Phone: (310) 836-6000
                                           Fax:    (310) 836-60106
15                                         E-Mail: service@braunlawgroup.com

16

17                                         Roy A. Katriel

18                                         **THE KATRIEL LAW FIRM**
                                           4225 Executive Square, Suite 600
19                                         La Jolla, CA 92037
20                                         Tel:   (858) 242-5642
                                           Fax:   (858) 430-3719
21                                         E-mail: rak@katriellaw.com

22

23                                         *Counsel for Plaintiff*

24

25

26

27

28
                                           25

Davison v. Kia Motors America, Inc.                    No. 8:15-cv-00239-CJC-RNB
                                           Pltf's Opp. to Dft's Mtn To Dismiss
                                           Or Strike Class Allegations Of FAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Davison v. Kia Motors America, Inc.

No. 8:15-cv-00239-CJC-RNB
Pltf's Opp. to Dft's Mtn To Dismiss
Or Strike Class Allegations Of FAC