RICHARD B. GOETZ (S.B. #115666)
rgoetz@omm.com
CARLOS M. LAZATIN (S.B. #229650)
clazatin@omm.com
MICHAEL REYNOLDS (S.B. #270962)
mreynolds@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407

Attorneys for Defendant
KIA MOTORS AMERICA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

COLLEEN DAVISON, individually
and on behalf of all others similarly
situated,

                    Plaintiff,

          v.

KIA MOTORS AMERICA, INC.,

                    Defendant.

Case No. SACV15-00239 CJC (RNBx)

**CLASS ACTION**

**DEFENDANT KIA MOTORS
AMERICA, INC.'S REPLY IN
SUPPORT OF MOTION TO
DISMISS AND/OR STRIKE
ALLEGATIONS IN FIRST
AMENDED COMPLAINT**

Hearing Date: June 29, 2015
Time:             1:30 p.m.
Courtroom:    9B
Judge:          Hon. Cormac J. Carney

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   PLAINTIFF FAILS TO STATE A FRAUDULENT OMISSION
      CLAIM ..................................................................................... 2

      A.   Plaintiff Must Allege Facts Showing That She Would Have
           Seen a Disclosure of the Omitted Information ...................... 2

      B.   The Amended Complaint Does Not Contain Any Facts Showing
           That Kia Knew of the Alleged Defect ................................... 5

      C.   NHTSA Found That the Alleged Door Lock Issue Does Not
           Pose an Unreasonable Safety Hazard ................................... 7

      D.   Plaintiff Concedes That, Absent a Duty to Disclose, Kia Has No
           Post-Warranty Duty to Recall or Repair............................. 12

III.  PLAINTIFF'S UCL CLAIM MUST BE DISMISSED BECAUSE
      SHE HAS NO REMEDY UNDER THE STATUTE ................................. 12

      A.   Plaintiff's Claim for "Restitution" of Repair Costs Must Be
           Struck ................................................................................ 12

      B.   Plaintiff Lacks Standing to Seek Injunctive Relief............... 13

IV.   PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK............. 13

      A.   The Overwhelming Weight of Authority Recognizes That Class
           Allegations May Be Struck Under Rule 12(f) ...................... 13

      B.   Plaintiff Cannot Distinguish This Case from *Mazza* ......... 15

      C.   The Putative Class Cannot Include Owners Who Have No Issues
           with Their Door Lock ....................................................... 17

V.    CONCLUSION ....................................................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*,
2012 WL 1400302 (C.D. Cal. Apr. 23, 2012)......................................................12

*Bruno v. Eckhart Corp.*,
280 F.R.D. 540 (C.D. Cal. 2012) .............................................................15, 16

*Chamberlan v. Ford Motor Co.*,
369 F. Supp. 2d 1138 (N.D. Cal. 2005)...............................................................5

*Clancy v. Bromley Tea Co.*,
2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013)................................15

*Clerkin v. MyLife.com, Inc.*,
2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011)................................14

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006)................................................................................8

*Doyle v. Chrysler Grp., LLC*,
2014 U.S. Dist. LEXIS 93157 (C.D. Cal. July 3, 2014) ..................................3, 4

*Edwards v Ford Motor Co.*,
2015 WL 847193 (9th Cir. Feb. 27, 2015)......................................................8, 17

*Ehrlich v. BMW of N. Am., LLC*,
801 F. Supp. 2d 908 (C.D. Cal. 2010).........................................................passim

*Eisen v. Porsche Cars N. Am., Inc.*,
2012 U.S. Dist. LEXIS 116836 (C.D. Cal. Feb. 22, 2012)..................................9

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007)......................................................5, 8, 10

*Frenzel v. Aliphcom*,
2014 U.S. Dist. LEXIS 177880 (N.D. Cal. Dec. 29, 2014) ..............................15

*Frezza v. Google, Inc.*,
2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ................................15

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Griffin v. Singletary*,
  17 F.3d 356 (11th Cir. 1994) ............................................................................. 14

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 2631326 (C.D. Cal. Jun. 12, 2013) .............................................. 9, 10

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ............................................................................. 13

*Herremans v. BMW of N. Am., LLC*,
  2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) .................................. 4

*In re Citibank HELOC Reduction Litig.*,
   2010 U.S. Dist. LEXIS 95938 (N.D. Cal. Aug. 30, 2010) .............................. 13

*In re Clorox Consumer Litig.*,
  894 F. Supp. 2d 1224 (N.D. Cal. 2012) ............................................................ 15

*In re Facebook PPC Adver. Litig.*,
  2010 U.S. Dist. LEXIS 87769 (N.D. Cal. Aug. 25, 2010) ................................. 3

*In re Katrina Canal Breaches Litig.*,
  401 Fed. App'x 884 (5th Cir. 2010) ................................................................. 14

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) .............................................................................. 6

*In re Toyota Motor Corp. Unintended Acceleration Marketing,*
  *Sales Practices, & Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................ 18

*In re Toyota Motor Corp.*,
  790 F. Supp. 2d 1152, 1166 n.11 (C.D. Cal. 2011) .......................................... 18

*In re Turbodyne Techs., Inc. Sec. Litig.*,
  2000 U.S. Dist. LEXIS 23020 (C.D. Cal. Mar. 15, 2000) ................................. 6

*Kearney v. Hyundai Motor Am.*,
  2010 WL 8251077 (C.D. Cal. Dec. 17, 2010) .................................................. 11

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................ 10, 11

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lee v. Toyota Motor Sales U.S.A., Inc.,*
  992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................................. 18

*Machado v. Cal. Dep't of Corr.,*
  2013 U.S. Dist. LEXIS 181466 (C.D. Cal. Nov. 12, 2013) ................................. 6

*Manning v. Bos. Med. Ctr. Corp.,*
  725 F.3d 34 (1st Cir. 2013) .................................................................................... 14

*Marolda v. Symantec Corp.,*
  672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................................. 3

*Marsikian v. Mercedes Benz USA, LLC,*
  2009 WL 8379784 (C.D. Cal. May 4, 2009) ......................................................... 10

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ....................................................................2, 15, 16, 17

*Mirkin v. Wasserman,*
  5 Cal. 4th 1082 (1993) ............................................................................................ 3

*Okla. Firefighters Pension & Ret. Sys. v. Ixia,*
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) ................................................................... 6

*Parenteau v. GM, LLC,*
  2015 U.S. Dist. LEXIS 31184 (C.D. Cal. Mar. 5, 2015)
  (Klausner, J.) ............................................................................................................2, 4

*Pilgrim v. Universal Health Card, LLC,*
  660 F.3d 943 (6th Cir. 2011) .................................................................................. 14

*Rikos v. Procter & Gamble Co.,*
  2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012) ................................... 15

*Route v. Mead Johnson Nutrition Co.,*
  2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013) ................................... 14

*Sanders v. Apple Inc.,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 14

*Sims v. Kia Motors Am., Inc.,*
  No. SACV 13-1791 AG (DFMx) .............................................................................2, 5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011)..................................................................9

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014) ................................14

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)................................................14

*Werdebaugh v. Blue Diamond Growers*,
   2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013)................................15

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010)..................................................................14

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)..............................................................6, 8

*Wolin v. Jaguar Land Rover N. Am.*,
   617 F.3d 1168 (9th Cir. 2010)..................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................14

Fed. R. Civ. P. 12(f)...............................................................2, 13, 14

Fed. R. Civ. P. 9(b) .................................................................2, 4, 5

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

## I.      INTRODUCTION

To maintain her class action lawsuit for fraudulent non-disclosure under California law, plaintiff Colleen Davison ("Plaintiff") must do more than allege that a part in her 12-year-old car has broken down or that parts in other Kia cars that are over a decade old have broken down.  She must do more than assert that it is self-evident the issue with her car door lock poses a safety risk—when the National Highway Traffic Safety Administration ("NHTSA") disagrees in the very report Plaintiff attaches to her opposition.  And she must do more than posit a safety risk based on a series of remote and speculative scenarios.  Plaintiff must plead the basic elements of her claims, including plausible allegations of an unreasonable safety risk, facts showing that Kia knew of that risk at the time Plaintiff bought her car in 2003, and averments showing that she would have seen and acted upon the disclosures she contends Kia should have made.  Plaintiff's First Amended Complaint ("FAC") fails on all these counts and more, and should be dismissed.

First, Plaintiff ignores the overwhelming authority establishing that, to plead an omission claim, she must plead that she would have seen any disclosure of the omitted information and identify the advertisements or marketing she actually relied on in making her purchase.  The cases Plaintiff cites in her opposition both recognize and are consistent with this rule.

Second, Plaintiff does not dispute that the FAC fails to plead facts showing that Kia knew of the defect at the time of sale.  Instead, she seeks to introduce *new* factual allegations, unveiled for the first time in her opposition, that appear nowhere in her complaint.  Because the Court may not consider facts outside the operative complaint, the FAC should be dismissed on this ground as well.

Third, Plaintiff claims "there can be no serious dispute" that the alleged door lock defect poses a safety risk—when the very report she attaches to her brief shows that NHTSA concluded that the very same purported defect *did not threaten the safety of car occupants*.  Indeed, Plaintiff has *never* explained how an occupant

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

1   could be injured by being unable to open the driver or front passenger door of a car.

2       Fourth, Plaintiff's claim that she can seek restitution for her replacement door

3   lock is not supported by the FAC. She never alleges she bought a replacement part

4   at all, much less from Kia. Nor does she ever seek restitution for the amount she

5   allegedly overpaid for her car.

6       Fifth, she concedes she has no standing to seek an injunction requiring any

7   disclosure from Kia. And she then fails to address the fact—which Kia raised in its

8   motion—that she has no irreparable harm or inadequate legal remedy that would

9   confer Article III standing to seek any kind of injunction at all.

10       Finally, Plaintiff's class allegations should be struck. Plaintiff ignores the

11   weight of precedent permitting courts to strike class allegations under Rule 12(f).

12   Rather than try to distinguish the Ninth Circuit's controlling decision in *Mazza*,

13   Plaintiff claims only that *Mazza* should not be applied now—yet fails to identify a

14   single fact she hopes to unearth in discovery that will impact the choice-of-law

15   analysis in this case. Her class allegations also fail because the class impermissibly

16   includes members whose car doors work and who have suffered no injury.

17   **II.**    **PLAINTIFF FAILS TO STATE A FRAUDULENT OMISSION CLAIM**

18       **A.**    **Plaintiff Must Allege Facts Showing That She Would Have Seen a Disclosure of the Omitted Information**

19

20       Plaintiff's opposition brief never addresses the long line of authorities cited

21   in Kia's motion holding that, under Rule 9(b), a plaintiff pleading a fraudulent

22   omission claim must identify any advertisements or marketing he relied on in

23   making his purchase, so that the plaintiff can plausibly plead that he would have

24   seen a disclosure of the omitted information. (Mot. at 6-8, citing *Parenteau v. GM,*

25   *LLC*, 2015 U.S. Dist. LEXIS 31184, at *19-20 (C.D. Cal. Mar. 5, 2015) (Klausner,

26   J.); *Sims v. Kia Motors Am., Inc.*, No. SACV 13-1791 AG (DFMx), at 7-8 (C.D.

27   Cal. Oct. 8, 2014) (Guilford, J.), Dkt. No. 57; *Ehrlich v. BMW of N. Am., LLC*, 801

28   F. Supp. 2d 908, 919-20 (C.D. Cal. 2010) (Collins, J.); *In re Facebook PPC Adver.*

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

1   *Litig.*, 2010 U.S. Dist. LEXIS 87769, at *29-30 (N.D. Cal. Aug. 25, 2010);

2   *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).)  Plaintiff

3   implicitly recognized this line of authority when she amended her original

4   complaint in response to Kia's first motion to dismiss to allege specific disclosures

5   she contends Kia should have made.  (*Compare* Compl. ¶ 10 *with* FAC ¶ 32.)

6       Plaintiff now claims, however, that she need not plead facts showing that she

7   would have seen the disclosure because reliance can be presumed if the omitted

8   information is material.  (Opp. at 8.)  But her argument conflates ***reliance*** on the

9   disclosed information with ***exposure*** to that information.  These are two distinct

10  requisites:  the California Supreme Court has held that a plaintiff must plead that

11  "had the omitted information been disclosed, [he] would have been aware of it ***and***

12  behaved differently."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)

13  (emphasis added); *see also Ehrlich*, 801 F. Supp. 2d at 919-20.  Thus, even if a

14  court could presume reliance—that the plaintiff would have behaved differently—

15  the plaintiff must still plead and prove he would have seen or heard the disclosure.

16  For example, although the *Ehrlich* court found that it "may reasonably infer

17  Plaintiff's . . . actual ***reliance*** on the omission," it dismissed the plaintiff's omission

18  claim because the complaint was "devoid of allegations that Plaintiff would have

19  plausibly ***been aware*** of the . . . defect . . . had [the defendant] publicized this

20  information."  801 F. Supp. 2d at 919-20 (emphasis added).

21      The two cases on which Plaintiff relies are actually consistent with the rule

22  that she must allege what she saw and relied on in making her car purchase.

23  Plaintiff cites *Doyle v. Chrysler Grp., LLC*, 2014 U.S. Dist. LEXIS 93157 (C.D.

24  Cal. July 3, 2014), in which the court acknowledged the rule in *Ehrlich* and took

25  pains to distinguish its facts and harmonize its decision with *Ehrlich*, recognizing

26  an exception to the rule for products where a consumer would not normally review

27  marketing materials before purchase.  *Id.* at *15-16.  In *Doyle*, the consumer had

28  purchased a replacement part for his car.  *Id.* at *13-14.  The court noted that the

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

1    purchase of a replacement part was different from a car purchase (the product in

2    *Ehrlich*) because the purchase of a car, unlike a spare part, "would be the sort of

3    purchase where consumers would reasonably be expected to review [promotional]

4    materials." *Id.* at *16.  Given the special nature of the transaction in *Doyle*—the

5    purchase of a replacement part when the owner was having his car repaired at a

6    dealership—the court felt it should not impose "as broad a duty on plaintiffs to

7    investigate products prior to purchase" as it might for standard consumer

8    transactions. *Id.* at *17-18.  Instead, the *Doyle* court recognized a rebuttable

9    presumption that, under the circumstances, the plaintiff would have seen and relied

10   on a material disclosure. *Id.*

11        Plaintiff also cites *Herremans v. BMW of North America, LLC*, 2014 U.S.

12   Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014).  But the court in *Herremans*

13   expressly acknowledged that, under Rule 9(b), "[t]o plead the circumstances of

14   [the] omission with specificity, plaintiff must . . . provide representative samples of

15   advertisements, offers, or other representations that plaintiff relied on to make her

16   purchase and that failed to include the allegedly omitted information." *Id.* at *9.

17   And the court specifically found that the plaintiff had adequately alleged that she

18   had been exposed to certain marketing before her purchase: "[E]ven were there a

19   requirement that a plaintiff . . . plead that she reviewed marketing materials

20   concerning the product before she purchased it, [her] allegation[s] would suffice to

21   satisfy it." *Id.* at *63 n.96; *see also Parenteau*, 2015 U.S. Dist. LEXIS 31184, at

22   *20 (distinguishing *Herremans* on the ground that the *Herremans* court found that

23   the plaintiff had alleged exposure to representations from the defendant).  To the

24   extent the *Herremans* court relied on *Doyle* to suggest, in its discussion of reliance,

25   that a plaintiff does not need to allege that he reviewed any materials, it misreads

26   *Doyle* as having established a general rule that a plaintiff need not allege that he

27   saw any materials prior to purchase.  *Doyle* did no such thing.

28        None of the other cases cited by Plaintiff is relevant because none addresses

4

the issue here—whether a plaintiff must allege the materials relied on in making the purchasing decision.  The court in *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal 2007), simply noted that the plaintiff had sufficiently pled an omission claim based on theories of exclusive knowledge and active concealment. *Id.* at 1094-95.  The decision in *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005), which came on a summary judgment motion, addressed the ***evidence*** plaintiffs needed in order to prove that they would have been exposed to the disclosure and found that a jury could find, based on "the weight of the evidence," that they had relied on the omission.  *See id.* at 1146.  It did not hold that plaintiffs need not ***plead*** that they would have been exposed to a disclosure of omitted information.

Plaintiff's discussion of the supposed materiality of the omission therefore misses the mark.  Even if Plaintiff ultimately proves that the omitted information is material, she must also prove that she would have seen a disclosure of the information.  *Ehrlich*, 801 F. Supp. 2d at 919-20.  If she cannot, her claim fails because she cannot prove that the disclosure would have changed her purchasing decision.  *Id.*; *Sims*, No. SACV 13-1791 AG (DFMx), at 8.  As Judge Guilford noted in *Sims*, if plaintiffs do not allege "what materials they relied upon in making their purchasing decisions," defendants are "left to speculate . . . whether any such disclosure would have influenced the purchasing decision of [p]laintiffs."  *Id.* at 8. That is precisely the sort of pleading Rule 9(b) does not allow.

**B.**   **The Amended Complaint Does Not Contain Any Facts Showing That Kia Knew of the Alleged Defect**

Plaintiff's opposition brief never contests Kia's showing that none of the alleged facts in the FAC indicates that Kia knew of any purported defect at the time Plaintiff says she bought her Optima in 2003.  (*Compare* Mot. at 8-9 *with* Opp. at 17-18.)  Plaintiff instead misstates the allegations of her complaint, claiming that her FAC "past[es] actual consumer complaints about the issue that were sent to

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

1   NHTSA and to Kia's dealers **before** Davison purchased her 2003 Kia Optima," and

2   that the FAC "alleges that NHTSA investigated these very complaints of defective

3   door locks plaguing the Kia Optima as early as the 2001 model year," which was

4   "two years before Davison's vehicle was purchased."  (Opp. at 17 (emphasis in

5   original).)  This is simply untrue:  the FAC does not reference a single complaint

6   sent to NHTSA before Plaintiff's purchase in 2003 and does not allege that NHTSA

7   ever investigated the door lock issue before 2003.  (*See* Opp. at 17:5-9; FAC ¶¶ 8-9,

8   15-20.)  Plaintiff could not possibly make that allegation, since the investigation

9   occurred in 2004 and 2005, at least a year **after** she bought her car.  (FAC ¶ 38.)

10  Because the complaints and investigation alleged in the FAC post-date Plaintiff's

11  purchase, they cannot show that Kia had notice of the defect **at the time of sale**.

12  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147-48 (9th Cir. 2012).

13          Recognizing the insufficiency of her allegations, Plaintiff asks the Court in

14  her opposition brief to consider a new set of allegations about complaints and

15  warranty claims referenced in a NHTSA report closing the 2004-2005 investigation.

16  None of these allegations appears in the FAC.  Plaintiff cannot supplement her

17  complaint now to avoid dismissal even with judicially noticeable facts.  *Okla.*

18  *Firefighters Pension & Ret. Sys. v. Ixia*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal.

19  2014) ("Plaintiffs cannot utilize [judicially noticeable] documents to amend the

20  complaint and defeat defendants' motions to dismiss."); *see also Machado v. Cal.*

21  *Dep't of Corr.*, 2013 U.S. Dist. LEXIS 181466, at *30 n.2 (C.D. Cal. Nov. 12,

22  2013); *In re Turbodyne Techs., Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 23020, at

23  *30-31 (C.D. Cal. Mar. 15, 2000).

24          Nor is NHTSA's closing report incorporated by reference in Plaintiff's

25  complaint—Plaintiff does not even argue that it is.  (*See* Pl's Req. for Judicial

26  Notice at 1.)  A document is incorporated by reference where its "contents are

27  alleged in a complaint."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986

28  (9th Cir. 1999) (citation omitted).  But Plaintiff never mentions the NHTSA closing

6

1   report in her FAC, much less alleges anything contained in it.  At most, Plaintiff

2   mentions in her complaint that NHTSA opened a preliminary investigation in 2004,

3   but omits the fact that NHTSA decided to close the investigation or that NHTSA

4   issued a closing report.  (*See* FAC ¶ 38.)  Plaintiff cannot save her complaint by

5   introducing, in her opposition brief, new facts never alleged in the complaint.

6   **C.   <u>NHTSA Found That the Alleged Door Lock Issue Does Not Pose</u>**

7   **<u>an Unreasonable Safety Hazard</u>**

8        Plaintiff contends that "[o]bjectively, there can be no serious dispute that . . .

9   a defect that impairs occupants' ability to exit the vehicle poses real safety concerns

10   and risks," dismissing any argument to the contrary as one "that could only be

11   conceived of by lawyers."  (Opp. at 11-13.)

12        But the very same report that Plaintiff attached to her opposition indicates

13   that the National Highway Traffic Safety Administration concluded otherwise—

14   finding that the alleged door lock defect did not present a significant safety hazard.

15   NHTSA's Office of Defects Investigation ("ODI"), the specialized arm of NHTSA

16   responsible for identifying auto safety defects, conducted an investigation into the

17   alleged door lock defect in 2004 and 2005, and declined to order a recall.  Instead,

18   the agency concluded:

19        [T]he evidence fails to disclose a malfunction with a clear and

20        consistent pattern of compromise to motor vehicle safety.  ODI

21        believes that malfunction of the subject door lock system may

22        impede the normal egress of a vehicle occupant but that ***it does***

23        ***not entrap that occupant***. . . . [The] incidence of malfunctions

24        has not been accompanied by a definitive history of

25        demonstrated safety-related implications.

26   (Pl's Req. for Judicial Not., Ex. 1 at 16 (emphasis added).)  These findings are not

27   the spin of Kia or its lawyers—they are the considered conclusion of NHTSA, the

28   federal agency tasked with regulating motor vehicle and highway safety.

7

1   The report indicates that the NHTSA investigation lasted over a year, and

2   included disclosure of numerous documents, specifications, and consumer data

3   from Kia on the alleged defect, independent testing by ODI at NHTSA's Vehicle

4   Research and Test Center in Ohio, and consumer interviews by both Kia and

5   NHTSA.  (*Id.*, Ex. 1 at 10-12.)  Based on all this evidence, NHTSA concluded that

6   the matter should be closed and that "the further expenditure of agency resources on

7   this investigation does not appear to be warranted."  (*Id.*, Ex. 1 at 16.)  While

8   NHTSA did not foreclose the possibility that new evidence might show safety

9   concerns and thus stopped short of a definitive finding "that a safety-related defect

10  does not exist," based on the evidence it uncovered, it declined to order a recall.

11  (*Id.*)  Nothing alleged in Plaintiff's complaint is inconsistent with the evidence that

12  NHTSA considered.  (*See generally* FAC ¶¶ 21-26.)  And Plaintiff does not allege,

13  to this day, that NHTSA has ever reopened its investigation or revisited its

14  conclusion that the alleged defect did not warrant a safety recall.

15  Yet Plaintiff apparently believes that because she can ***conceive*** of certain

16  situations in which a jammed door might pose a risk to occupants' safety, Kia

17  should have disclosed the alleged defect.  But Kia does not have a duty to disclose

18  where there is a ***conceivable*** safety hazard—only an "***unreasonable*** safety hazard"

19  creates a duty to disclose.  *Edwards v Ford Motor Co.*, 2015 WL 847193, at *2 (9th

20  Cir. Feb. 27, 2015)[1]; *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-

21  43 (9th Cir. 2012); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 836

22  (2006); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007);

23  *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 917 (C.D. Cal. 2010).  After

24  two rounds of pleading and the current round of briefing, Plaintiff has yet to spell

25  

26  [1] Plaintiff faults Kia for not citing *Edwards* in its brief.  (Opp. at 1.)  But *Edwards* is
an unpublished memorandum disposition that simply restates the well-established

27  rule set forth in *Wilson* and *Daugherty*, both of which were cited repeatedly in Kia's
motion.  *See Edwards*, 2015 WL 847193, at *2.  Moreover, an unpublished

28  disposition like *Edwards* is not even valid precedent.  9th Cir. R. 36-3(a).

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

1   out exactly how the alleged defect here poses an unreasonable safety risk.  She has

2   never explained how she could be injured merely by being unable to open her

3   driver or front passenger doors.

4         Indeed, the sort of risk posited by Plaintiff here is precisely the sort of

5   speculative risk that the Ninth Circuit in *Smith v. Ford Motor Co.*, 462 F. App'x

6   660 (9th Cir. 2011), and a court in this district in *Eisen v. Porsche Cars N. Am.,*

7   *Inc.*, 2012 U.S. Dist. LEXIS 116836 (C.D. Cal. Feb. 22, 2012), found did not

8   require disclosure.  *Smith*, 462 F. App'x at 663; *Eisen*, 2012 U.S. Dist. LEXIS

9   116836, at *12-13.  In those cases, the risk of being stranded outside one's car—

10  even though there were conceivable circumstances that might endanger the driver—

11  was held not to be an unreasonable risk "as a matter of law."  *Smith*, 462 F. App'x

12  at 663; *Eisen*, 2012 U.S. Dist. LEXIS 116836, at *12-13.  Here, being momentarily

13  stranded in a car is similar; there is no risk to the occupant without the occurrence

14  of some external circumstance unrelated to the defect.[2]

15        None of the cases cited by Plaintiff supports a different conclusion.  Plaintiff

16  carefully prunes a quotation from *Grodzitsky v. American Honda Motor Co.*, 2013

17  WL 2631326 (C.D. Cal. Jun. 12, 2013), to imply that the court there found that

18  malfunctioning car windows that jammed ***closed*** risked occupant safety.  (Opp. at

19  11-12.)  In reality, the defect in *Grodzitsky* caused the windows to fall ***open***

20  suddenly—sometimes "with enough force to shatter the glass"—"creating a risk of

21  injury to driver and occupants."  2013 WL 2631326, at *1-2.

22

23

24

---

25  [2] For the same reason, Plaintiff's seatbelt hypothetical is irrelevant.  Even if the
26  occupant were trapped by a seatbelt, his safety would not be at risk unless there
     were some other external event requiring a quick exit.  Moreover, a defective
27  seatbelt that will not disengage would not allow the occupant to get out at all.  Here,
     Plaintiff herself alleges the occupant can get out of the car through the other doors
28  or through a window.  (*See* FAC ¶¶ 12, 16-21.)

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

| Plaintiff's Opposition Brief, at 12:2-4 | *Grodzitsky*, 2013 WL 2631326, at *1. |
|---|---|
| "[E]ven an allegedly defective window mechanism that is 'susceptible to frequent mechanical failure rendering the Class Vehicle's side windows inoperable and often irretrievably stuck,' [citation] states a safety risk defect . . . ." | "[The window defects] by their nature [are] susceptible to frequent mechanical failure rendering the Class Vehicle's side windows inoperable and often irretrievably stuck ***in the fully open position***." |

Besides the shattering window, which could spray the driver with broken glass, the defect in *Grodzitsky* could also expose the driver to the elements or flying objects on the road or allow the driver to be ejected from the car in an accident. *Id.* at *6. *Grodzitsky* never addresses the risk of being momentarily unable to exit a vehicle.

In fact, the hypothetical risk posed by a jammed front door does not fit any of the cases cited by Plaintiff where a court found a potential duty to disclose. In some cases, the defect itself had the potential to cause an accident. In *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784 (C.D. Cal. May 4, 2009), for example, the alleged defect had the potential to cause engine flooding which could cause the engine to stall while the car was traveling at high speeds. *Id.* at *1. And in *Falk*, the allegedly defective speedometer could cause the driver to travel at unsafe speeds and risk accidents. 496 F. Supp. 2d at 1096; *see also Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 943-44 (C.D. Cal. 2012) (defective suspension could cause sudden tire failure while vehicle is in motion). Plaintiff has never alleged that the alleged door lock defect can itself cause an accident.

In other cases, the defect prevented a safety feature in the car from protecting the occupant in the event of an accident. Thus, in *Ehrlich*, a windshield cracking defect would allegedly cause the roof to collapse in the event of a rollover accident, injuring the driver, or would cause the window to dislodge, failing to prevent the

driver from being thrown from the vehicle.  801 F. Supp. 2d at 913; *see also Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *6 (C.D. Cal. Dec. 17, 2010) (defective airbags would not deploy in an accident).  Here, in contrast, a jammed door would actually protect the occupant in the event of an accident and would pose no direct risk to the occupant even after the accident.  Only if there was some other circumstance, besides the accident, could one conceivably be at risk.

Indeed, the only possible situation where occupant safety would be at risk here rests upon a highly speculative set of events, requiring contingency upon contingency.  First, the driver must get into an accident, but an accident not serious enough to damage and jam the door—because if the accident prevented the door from opening, it would not matter that the lock will not unlock.  Second, the driver must not be physically able, due to age or infirmity, to climb out the window or exit through one of the other passenger doors.[3]  Third, the driver must for some reason not be able to roll down the window and reach out and unlock the door from the outside.[4]  Fourth, there must be some exigency that would have the potential to harm the occupant (such as a fire) before help arrived.  And finally, the driver must have ignored the progressively deteriorating defect and continued driving without repairing the door lock.[5]  This sort of attenuated, speculative risk does not constitute an "unreasonable" safety risk requiring disclosure.

---

[3] Plaintiff posits a situation where all the doors may be jammed, but her allegations are that only the driver and front passenger doors are affected.  (*See* FAC ¶¶ 21-26.)

[4] Although Plaintiff alleges that she was unable to roll down her window and unlock the driver-side door from the outside—which seems to contradict her allegation that she "could [unlock the doors] from the outside"—according to several of the complaints referenced in the FAC, some drivers were able to exit using this method.  (FAC ¶¶ 12, 20.)

[5] Plaintiff misrepresents *Keegan* in claiming that it held that even "open and obvious" defects that a driver can repair can still constitute an unreasonable safety risk.  (Opp. at 15.)  *Keegan* actually held that the defect in that case was ***not*** open and obvious.  838 F. Supp. 2d at 942-43.

11

1

### D.  **Plaintiff Concedes That, Absent a Duty to Disclose, Kia Has No Post-Warranty Duty to Recall or Repair**

2

3    Plaintiff does not contest Kia's showing in its opening brief (*see* Mot. at 14-

4    18) that Kia has no duty to recall or repair under any of her causes of action.  She

5    concedes that the only claim she brings is based on a theory that Kia had a duty to

6    disclose at the time of sale, that is, an omission claim.  (Opp. at 4:1-2 ("This case is

7    not about Kia's duty to *warrant*, but rather about its duty to *disclose*.") (emphasis in

8    original).)  Therefore, if the Court finds that she has not pleaded a valid omission

9    claim, all of Plaintiff's claims must be dismissed.

10   ### III.  **PLAINTIFF'S UCL CLAIM MUST BE DISMISSED BECAUSE SHE HAS NO REMEDY UNDER THE STATUTE**

11

12   Plaintiff fails to demonstrate that she has pled a valid claim for restitution

13   under the UCL, and she lacks Article III standing to seek injunctive relief.  Because

14   she has no available remedy under the UCL, her UCL claim must be dismissed.

15   *Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*, 2012 WL 1400302, at *6-7 (C.D.

16   Cal. Apr. 23, 2012).

17   ### A.  **Plaintiff's Claim for "Restitution" of Repair Costs Must Be Struck**

18   Plaintiff claims she is entitled to restitution for her "payment of money to

19   purchase a new Kia door lock part."  (Opp. at 19.)  But her complaint does not

20   allege that she ever paid for a Kia door lock part, or that Kia ever received any

21   money from Plaintiff for the repair of her door lock.  The FAC simply alleges that

22   Plaintiff "[had] the driver's side door fixed."  (FAC ¶ 26.)  It does not say whom

23   she paid to repair her vehicle or where she obtained replacement parts, if she did at

24   all.  Her mechanic might have repaired her door without replacement parts or may

25   have obtained parts from a supplier other than Kia, such as a used parts supplier.

26   Because Plaintiff has not alleged that she (or anyone else) paid Kia any money in

27   connection with the replacement of her door lock, under well-established California

28   law, she has not stated a claim for restitution.  *In re Citibank HELOC Reduction*

1  *Litig.*, 2010 U.S. Dist. LEXIS 95938, at \*21-22 (N.D. Cal. Aug. 30, 2010).

2          Plaintiff also claims in her opposition that she is entitled to seek restitution

3  for the amount she allegedly overpaid for her car.  (Opp. at 19.)  But Plaintiff does

4  not seek to recover that amount in her complaint, and accordingly, Kia moved to

5  strike paragraphs 35 and 61 in Plaintiff's complaint (*see* Not. of Mot. at 1:20-21),

6  which do not seek restitution for alleged overpayment.  (FAC ¶¶ 35, 61.)  Because

7  she is not entitled to her repair costs as restitution, these paragraphs must be struck.

8          **B.    Plaintiff Lacks Standing to Seek Injunctive Relief**

9          Plaintiff does not dispute that she lacks standing to seek an injunction forcing

10  Kia to make any disclosure because she is not at risk of being deceived in the

11  future.  (*See* Opp. at 20; Mot. at 20-21.)  Indeed, she claims it is "now known" that

12  the door locks in the Class Vehicles are defective.  (*See* Opp. at 24:18-21.)

13          Plaintiff nonetheless maintains she has standing to seek an injunction

14  "directing Kia to replace the defective door lock" in her car.[6]  (*Id.* at 20:9-12.)  But

15  she never addresses Kia's showing, in its opening brief, that her complaint fails to

16  allege the Article III prerequisites for injunctive relief, namely, (i) irreparable harm

17  and (ii) lack of an adequate remedy at law.  (*See* Mot. at 21:7-13.)  Under Article

18  III, a plaintiff does not have standing to seek injunctive relief without "a ***real or***

19  ***immediate threat*** of an irreparable injury."  *Hangarter v. Provident Life & Accident*

20  *Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis in original).  Plaintiff's

21  alleged injury is clearly not irreparable, as she is seeking a monetary recovery for

22  that injury, namely, the cost of repairing her car door.  (FAC ¶¶ 60-61, E.)

23  **IV.   PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK**

24          **A.    The Overwhelming Weight of Authority Recognizes That Class**
           **Allegations May Be Struck Under Rule 12(f)**
25

26          Nearly all the courts, federal district and circuit courts alike, that have

---

27  [6] Contrary to Plaintiff's assertion (*see* Opp. at 20:4-7), Kia specifically addressed
28  her argument on page 21 of its motion.  (Mot. at 21.)

considered the issue have recognized that class allegations may be struck at the pleading stage on a Rule 12(f) motion. *See, e.g.*, *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *In re Katrina Canal Breaches Litig.*, 401 Fed. App'x 884, 886 (5th Cir. 2010); *Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994); *Route v. Mead Johnson Nutrition Co.*, 2013 U.S. Dist. LEXIS 35069, at *23-24 (C.D. Cal. Feb. 21, 2013); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009). Indeed, not a single circuit court has ruled that it is inappropriate to strike class allegations at the pleading stage when the pleadings so warrant.

In the face of this weight of authority, Plaintiff cites a single, unpublished district court opinion, *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014), finding that a party may not move to strike class allegations under Rule 12(f).[7] But the district court in *Tasion* misapplied the Ninth Circuit's decision in *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), which did not even involve a class action and which simply held that Rule 12(f) is not the appropriate vehicle to strike a claim for relief when a Rule 12(b)(6) motion would be more appropriate. *Id.* at 974. Class allegations, in contrast, cannot be challenged under Rule 12(b)(6) because they are not a claim for relief. *Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735, at *9-10 & n.4 (N.D. Cal. Aug. 29, 2011) (holding that class allegations can be appropriately struck under Rule 12(f)). Thus, neither *Whittlestone* nor *Tasion* forecloses Kia's motion to strike the class allegations under Rule 12(f).

---

[7] Plaintiff again mistakenly accuses Kia of ignoring some factual or legal proposition, this time asserting that Kia never cited Rule 12(f). (Opp. at 20:21-22.) In fact, Kia cited and quoted Rule 12(f) on page 5 of its motion. (Mot. at 5.)

## B. Plaintiff Cannot Distinguish This Case from *Mazza*

It is entirely appropriate to strike class allegations at the pleading stage where, as here, the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), precludes certification of a nationwide class.  *See, e.g.*, *Frenzel v. Aliphcom*, 2014 U.S. Dist. LEXIS 177880, at *12-20 (N.D. Cal. Dec. 29, 2014); *Route*, 2013 U.S. Dist. LEXIS 35069, at *24-27; *Frezza v. Google, Inc.*, 2013 U.S. Dist. LEXIS 57462, at *15-24 (N.D. Cal. Apr. 22, 2013); *Rikos v. Procter & Gamble Co.*, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012).

Plaintiff notes that several courts have declined to apply *Mazza* at the pleading stage.  *See, e.g.*, *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 543 (C.D. Cal. 2012) ("*Mazza* is distinguishable from the present case because . . . the facts of this case differ from those in *Mazza*.")  But each of the cases she cites involved different causes of action, brought under different laws, and/or different factual allegations from those in *Mazza*:

- In *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013), the plaintiff alleged that defendant's food products were misleadingly labeled and brought claims under the California Health and Safety Code and the California Sherman Food, Drug, and Cosmetic Act ("Sherman Law").  *Id.* at *3-4, *8-9.

- In *Clancy v. Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013), the plaintiff alleged that defendant's claims about the health benefits of its tea products were misleading and brought claims under the Sherman Law, the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), and the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), in addition to claims under the UCL, CLRA, and False Advertising Law.  *Id.* at *2-4.

- In *In re Clorox Consumer Litigation*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012), the plaintiff claimed the defendant made misleading claims about

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

its cat litter and brought claims for breach of express warranty, in addition to claims under the UCL, CLRA, and False Advertising Law. *Id.* at 1228, 1231.

- In *Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012), the plaintiff claimed that defendant's claims about its liquid product's absorption and effectiveness were misrepresentations, and brought claims for breach of express warranty, in addition to claims under the UCL, CLRA, and False Advertising Law. *Id.* at 543.

Plaintiff's allegations here, by contrast, are virtually indistinguishable in all relevant respects from those in *Mazza*. In *Mazza*, as in this case, the plaintiff alleged that the defendant had concealed a defect in an automobile it manufactured and sold. 666 F.3d at 587. The plaintiff in *Mazza*, like Plaintiff here, brought claims under the CLRA and UCL, as well as under the False Advertising Law and for common law unjust enrichment. *Id*. The plaintiff in *Mazza,* like Plaintiff here, sought certification of a nationwide class under California substantive law. While Plaintiff argues it is premature to strike the nationwide class allegations before "any fact-specific choice of law analysis" (Opp. at 22), she fails to identify a single fact she hopes to unearth in discovery that would impact the choice-of-law analysis in this case. Nor does she explain how the same laws that were at issue in *Mazza*—the CLRA and UCL, along with the consumer protection laws of other states that were compared and analyzed in detail in *Mazza*—should be interpreted any differently now than they were when the Ninth Circuit decided *Mazza*.

As Kia laid out in its motion: (1) here, as in *Mazza*, state consumer protection laws have material differences that affect Plaintiff's omission claims, including the requirement of *scienter*, proof of reliance, and remedies afforded; (2) as the Ninth Circuit found in *Mazza*, states have a strong interest in applying their own laws to automobile sales within their own boundaries; and (3) California's interest in applying the CLRA and UCL to car sales outside the state is attenuated. (Mot. at

16

23.)  Plaintiff does not contest any of this analysis in her opposition.[8]

Where it is clear that a nationwide class cannot be certified, as it is here, there is no reason to wait until class certification to reach the inevitable result. Plaintiff's nationwide class allegations should be struck now.

## C.    The Putative Class Cannot Include Owners Who Have No Issues with Their Door Lock

Plaintiff's citation to *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010), and *Edwards v. Ford Motor Co.*, 2015 WL 847193 (9th Cir. Feb. 27, 2015), is off point because neither case considered whether individuals who had not experienced a manifestation of the alleged defect had suffered a cognizable injury for Article III standing purposes.  *See Webb v. Carter's Inc.*, 272 F.R.D. 489, 498-99 (C.D. Cal. 2011) ("[*Wolin*] did not address the standing of absent class members at all. This case therefore provides no support for Plaintiffs' standing argument.").  The issue in both cases was whether the named plaintiff had to prove that a defect existed in order to obtain class certification—not whether class members whose cars drove perfectly well had Article III standing.  *Wolin*, 617 F.3d at 1173-74; *Edwards*, 2015 WL 847193, at *2.  The court in *Wolin* concluded that proof that the defect existed and caused premature tire wear went to the merits of class members' claims and that such proof was not necessary for class certification.  *Wolin*, 617 F.3d. at 1173.

Lastly, Plaintiff argues that class members who have not experienced any defect have standing based on their alleged overpayment for their cars.  (Opp. at 24.)  But Plaintiff cites no authority for that proposition, and indeed, the relevant precedent confirms that these class members have no standing and no valid claim. Alleging overpayment is not enough to plead a basis for Article III standing.

---

[8] Nor is Plaintiff correct that Kia improperly conflated choice-of-law with the constitutional limits on extraterritorial application of California law.  Kia never mentioned any such constitutional limits in its motion and did not argue on this motion that Plaintiff (a Washington resident) could not bring claims under the CLRA or UCL.  Consistent with *Mazza*, Kia addressed choice-of-law issues.

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)

1  Plaintiff must allege facts showing that she received less than the benefit of her

2  bargain, for example, if she actually sold the vehicle at a loss or was unwilling to

3  drive it.  *See, e.g.*, *Lee v. Toyota Motor Sales U.S.A., Inc.*, 992 F. Supp. 2d 962, 973

4  (C.D. Cal. 2014) ("[W]here the alleged wrong stems from the assertion of

5  insufficient performance of a product or its features, a plaintiff must allege

6  'something more' than 'overpaying for a 'defective' product' to support a claim.");

7  *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 & n.11 (C.D. Cal. 2011)

8  ("[A]llegations of overpayment would be plausible only if Plaintiffs presented an

9  additional, objective basis to substantiate their allegations of overpayment," such as

10  "allegations based on market forces."); *In re Toyota Motor Corp. Unintended*

11  *Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145,

12  1166 (C.D. Cal. 2010) (noting that plaintiffs alleged they sold or traded in their

13  vehicles at a loss).  Plaintiff does not come close to meeting this standard and only

14  speculates that class members "would not have bought the Class Vehicles, or would

15  have paid substantially less for them."  (FAC ¶ 29.)  Because the vast majority of

16  class members lack standing and have no valid claim, Plaintiff's class allegations

17  should be struck.

18  **V.    CONCLUSION**

19      For the foregoing reasons, Kia respectfully requests that the Court grant its

20  motions to dismiss and to strike.

21

22      Dated:  June 15, 2015

23                                          RICHARD B. GOETZ
                                            CARLOS M. LAZATIN
24                                          MICHAEL REYNOLDS
                                            O'MELVENY & MYERS LLP
25                                          By:    */s/ Carlos M. Lazatin*
                                                   Carlos M. Lazatin
26                                          Attorneys for Defendant
                                            KIA MOTORS AMERICA, INC.
27

28

REPLY ISO MOT. TO DISMISS AND/OR
STRIKE FIRST AMENDED COMPLAINT
SACV15-00239 CJC (RNBX)